Overton B. BANKS et al., Appellants,

v.

John W. MECOM, Trustee et al., Appellees.

No. 4141.

Court of Civil Appeals of Texas.

Eastland.

Dec. 16, 1966.

Rehearing Denied Jan. 13, 1967.

———◆———

Overton Banks, Houston, for appellants.

Fouts, Moore, Caldwell & Coleman, Houston, Orgain, Bell & Tucker, Beaumont, J. L. LyBrand, Beaumont, for appellees.

COLLINGS, Justice.

This appeal originally involved appeals of Ellen D. Bay, Overton B. Banks and W. F. Hooks in which appellees were John W. Mecom, trustee, hereafter referred to as Mecom, Carnes W. Weaver, Freeport Sulphur Company, Sinclair Oil and Gas Company and Sun Oil Company. These appeals were dismissed with opinion reported in Bay v. Mecom, Tex.Civ.App., 387 S.W.2d 482. Our Supreme Court in an opinion reported in 393 S.W.2d page 819 affirmed the dismissal of the appeals of Ellen D. Bay and the dismissal of the appeal of Banks and Hooks against Sun Oil Company, but found that Banks and Hooks had the right to appeal from the summary judgment rendered against them when the court sustained the motions of Mecom, Weaver and Freeport Sulphur Company. That appeal is now before this court for determination.

The suit was originally filed by Ellen D. Bay, lessor of a mineral lease covering a fraction of an acre in the town of Hull. The lease dated October 28, 1949 was to Overton B. Banks and authorized the lessee to pool and combine it with other leases. The pooling provision of the lease was as follows:

"Lessee, at its option, is hereby given the right and power to pool or combine the acreage covered by this lease, or any portion thereof as to oil and gas, or either of them, with other land, lease or leases in the immediate vicinity thereof to the extent, hereinafter stipulated, when in Lessee's judgment it is necessary or advisable to do so in order properly to develop and operate said leased premises in compliance with the spacing rules of the Railroad Commission of Texas, or other lawful authority, or when to do so would, in the judgment of Lessee, promote the conservation of oil and gas from said premises. Units pooled for oil hereunder shall not substantially exceed 40 acres each in area, and units pooled for gas hereunder shall not substantially exceed in area 640 acres each plus a tolerance of 10% thereof, provided that should governmental authority having jurisdiction prescribe or permit the creation of units larger than those specified, units thereafter created may conform substantially in size with those prescribed by governmental regulations."

The record shows that Banks, on October 29, 1954, assigned the lease to John W. Mecom, predecessor in title to John W. Mecom, trustee. The assignment to Mecom reserved to Banks and Hooks a ⅛th overriding royalty. It contained a provision recognizing the right to pool in accordance with the terms of the lease. On December 29, 1954 said lease covering the fractional acre was pooled with other small leases in the immediate vicinity into a

pooled unit of less than 20 acres, with the stated right to thereafter, within 5 years include other adjacent tracts until the total acreage included in the unit amounted to 20 acres. Thereafter a well was drilled and completed on the unit, said well being located on the property covered by the Bay lease. The first production from the well was in March 1955. After completion of the well suit was filed by Ellen Bay against appellees seeking to cancel the unit. Hooks and Banks were also named defendants. Hooks and Banks filed a cross action against appellees seeking cancellation of the unit, and filed a motion for summary judgment. Appellees also filed a motion for summary judgment. The motion of appellees was granted and judgment was rendered sustaining the validity of the unit. It is that judgment of which appellants Banks and Hooks here complain.

Appellees' motion for summary judgment asserted that no genuine issues of fact existed in the case arising under appellants' pleadings or otherwise; that appellants' pleadings admitted that pooling was authorized under the pooling provision in the lease, as hereinabove quoted; that appellants' only alleged ground of invalidity of the pooled unit was in substance that the unit was not authorized by the pooling provision because it was not authorized by the Railroad Commission of Texas, in that, the Hull field in Liberty County in which the lease and unit were located had been classified by the Railroad Commission as, and at all times material hereto has been classified as, a "piercement type" salt dome field, and that in such type of field the commission makes no limitations on the distances wells may be drilled from lease lines or from each other; that the Hull field was thus a non prorated field, exempt from spacing rules and, therefore, pooling and unitization were prohibited and restricted.

■ From an examination of the pleadings, the motions for summary judgment and the affidavits filed by the parties in support of and in opposition thereto, we are of the opinion that there is no genuine issue as to any material fact in the case. The mineral interest Pooling Act, Article 6008c, Vernon's Ann.Tex.Civ.St., enacted in 1965 was not in effect at any time material to a determination of this cause. The general rule prior to such Act was that pooling was governed by the law of contract. Humble Oil & Refining Co. et al. v. Carr, 243 S.W.2d 709, (C.C.A.1951, ref. n. r. e.); Dailey v. Railroad Commission, 133 S.W.2d 219, (C.C.A.1939, writ ref.).

■ The authority to pool as shown in the pooling provision of the lease as herein set out is undisputed. It was provided therein that units pooled for oil should not substantially exceed 40 acres. It is undisputed that appellee Mecom executed an instrument forming a unit of less than 20 acres prior to the commencement and drilling of the oil well on the Bay fractional acre lease. It is undisputed that at that time there was production in the Hull field south of the unit here involved and that such production was from units of approximately 20 acres, and that there was also such a 20 acre unit to the east. The controversy between the parties arises from appellants' contention that the pooling unit in question was unauthorized by and exceeded the authority to pool provided for in the Ellen D. Bay lease to Overton B. Banks. Appellants' contention in this respect as set out in their first point is as follows:

"The per well or 100% well factor, no acreage factor, proration of wells and the absence of any spacing or unit rules for the Hull piercement type salt dome field precludes as a matter of law the creation of a pooled unit in said field; wherefore the unit designation of December 29, 1954 is a nullity without vitality or legal effect, and never became lawful nor effective as a pooled unit for the conservation of oil and/or gas; and had no effect whatsoever on Appel-

lants overriding royalty of ⅛th of the oil produced from the Bay well effective as of date of first production and continuously thereafter."

As authority for their contention appellants rely upon the recent Texas Supreme Court case of Jones v. Killingsworth, 403 S.W.2d 325. In our opinion that case does not support appellants' contention. In that case it was held that an oil, gas and mineral lease pooling clause limiting units pooled for oil to an area not substantially exceeding 40 acres but permitting units to conform in size with those *prescribed* by government regulations, if such regulations prescribed or permit larger units, did not authorize a 170.86 acre unit, where the rule governing the field provided that no proration unit should consist of more than 80 acres but permitted the operators to elect to assign an additional 80 acres and receive allowable credit of not more than 160 acres. In the instant case the Railroad Commission did not by rule or regulation prescribe or permit larger units in the Hull field than the 40 acre limit provided for in the pooling clause of the lease. The pooling instrument executed by Mecom on December 29, 1954, pooled a unit of less than 20 acres, an area well within the 40 acre limit. There was no need or occasion for appellee Mecom to rely upon a regulation or rule of the Railroad Commission enlarging such 40 acre provision, if such a rule had existed. Appellants' contention that the pooled unit was invalid because the Hull field was at all times material hereto classified as a "piercement type" salt dome field, and that in the Hull field there was a complete absence of any spacing or unit rules for oil wells drilled therein, is not well taken and is overruled. The pooling unit complained of was for less than 20 acres and well within the 40 acre limit provided by the pooling provision of the lease.

■ Mecom as lessee had the right and power to pool the acreage covered by the lease with other leases in the immediate vicinity when in his judgment such pooling "would promote the conservation of oil and gas from said premises." The lessee in such cases is of course required to exercise good faith in making a determination to pool. Tiller v. Fields, 301 S.W.2d 185, (Ct.Civ.Apps.1957). The affidavits of appellees in support of their motion for summary judgment clearly show good faith. Appellants have not denied but on the contrary have admitted that the unit designation in question was made in good faith. The court did not err in granting appellees' motion for summary judgment. Appellants' points are all overruled.

The judgment is affirmed.